# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Todd A. Duckson,                                    Civil No. 14-1465 MJD/JJK

                             Plaintiff,

                                          **REPORT AND RECOMMENDATION**
v.                                        **ON DEFENDANTS' MOTIONS TO**
                                          **DISMISS AND FOR SANCTIONS**

Continental Casualty Company,
Chicago Insurance Company,
Nautilus Insurance Company, and
Hinshaw & Culbertson, LLP,

                             Defendants.

_____

      Scott R. Carlson, Esq., DC Law Chartered, for Plaintiff;

      Joseph R. Menning, Esq., McCullough Campbell & Lane LLP, Chicago,
      Illinois, for Defendants Continental Casualty Company, Chicago Insurance
      Company, and Nautilus Insurance Company; and

      Russell S. Ponessa, Esq., Hinshaw & Culbertson LLP, for Defendant
      Hinshaw & Culbertson LLP.

_____

            This matter is before the Court, Magistrate Judge Jeffrey J. Keyes,

on a joint motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on behalf of all

Defendants (Doc. No. 7), and a joint motion for sanctions on behalf of all

Defendants (Doc. No. 14).  The motions have been referred to this Court for

Report and Recommendation under 28 U.S.C. §636(b)(1).  A hearing was held

on August 20, 2014, at the U.S. Courthouse, 316 North Robert Street, St. Paul,

Minnesota  55101.

It is this Court's conclusion that Defendants' joint motion to dismiss should be granted, and Defendants' joint motion for sanctions should be denied. The Court specifically recommends that Plaintiff's Count I claim for judgment declaring that an attorney malpractice insurance policy provides Plaintiff defense and indemnification coverage should be dismissed; Plaintiff's Count II claim for breach of contract should be dismissed; and Plaintiff's Count III claim for breach of fiduciary duty should be dismissed.

I. **Background and Claims**

Plaintiff Todd Duckson is an attorney who was employed by Defendant Hinshaw & Culbertson LLP ("Hinshaw") during times pertinent to this action. Plaintiff alleges that Defendants Continental Casualty Company, Chicago Insurance Company, and Nautilus Insurance Company (collectively "Insurers") failed to meet obligations under a legal malpractice insurance policy issued to Hinshaw that required the Insurers to provide Duckson a defense and indemnification for claims in a lawsuit brought against Plaintiff, Hinshaw and others in August 2012, in California state court ("Shoor Action").

The complaint in the Shoor Action alleged Duckson's misconduct between March 2008 and April 2009 in regards to his involvement in the sale of interests in a real estate investment fund, Capital Solutions Monthly Income Fund, LP (the "Fund"), in which members of the Shoor family had participated. The Shoor family alleged that Duckson made false or misleading statements or

2

omissions about the Fund in his capacity as a Fund member and manager, as well as through a separate investment management company, Transactional Finance Fund Management, LLC, that he owned or controlled.

## SEC Action

To put Duckson's claim that he is entitled to malpractice coverage for his defense in the Shoor Action into context, it is necessary to review the fraud action against Duckson brought by the SEC in the District of Minnesota, which resulted in a five-week jury trial and a verdict finding Duckson liable for securities fraud.[1]  The SEC suit alleged that Duckson, along with several other defendants, misled investors by misrepresenting the financial condition of the Fund. According to the SEC, Duckson's involvement in the fraudulent scheme started when he was an attorney at the Hinshaw law firm, doing securities work for the Fund.  For example, Duckson, as the Fund's outside counsel, participated in drafting a private placement memorandum ("PPM") in March 2008 which allegedly misled investors as to the Fund's financial condition.  The SEC charged that as the Fund's financial condition deteriorated after March 2008, the Fund lacked meaningful income-generating investments and began paying off existing investors out of proceeds from new investors, in classic Ponzi-scheme fashion. And, as these events unfolded, Duckson began taking on a business role,

---

[1] *Securities and Exchange Commission v. True North Finance Corporation, et al.*, Civ. No. 10-3995 DWF/JJK.  A motion for new trial is pending.

eventually controlling the Fund and profiting from its fraudulent operation.  During or around the fall of 2008, while he was still at the Hinshaw firm, Duckson agreed to become the Fund's investment advisor.  In November 2008, Duckson used a company named Transactional Finance Fund Management, LLC ("TFFM"), which he owned and controlled, to serve as the Fund's investment advisor.  At the SEC trial Duckson testified that as of October 26, 2008, TFFM was the general partner of the Fund and he had "total control over the Fund." (Doc. No. 16-6, Menning Aff., Ex. F.)  Around that time, Duckson announced his intention to leave the Hinshaw law firm at the end of 2008, which he did.  In November 2008, however, after he took control of the Fund, Duckson participated in drafting another PPM to raise more money for the Fund.  Like the earlier PPM in March 2008, this PPM, according to the SEC, fraudulently misrepresented the financial condition of the Fund.

        The SEC claimed that Duckson's fraudulent activity continued after he left Hinshaw on January 1, 2009.  For example, it accused Duckson of preparing yet another fraudulent PPM in February 2009, that, among other things, failed to disclose to potential investors that the offering proceeds would not be sufficient for the fund to make new investments.  And, the SEC accused Duckson of continuing the fraud by, for example, causing the Fund to stop paying investors in late 2009, but continuing to reap millions of dollars in fees through his investment advisory firm.  Ultimately, after the jury verdict, Judge Frank ordered

4

disgorgement of fees that TFFM (and thus Duckson) took in from November 2008

through March 2012, plus prejudgment interest, in the total amount of

$2,960,771.

As he has done in this case, Duckson sought insurance coverage for

the SEC action under Hinshaw's malpractice policy with Continental Casualty

Insurance Company.  Continental brought a declaratory judgment action in

Illinois.  *Continental Cas. Co. v. Duckson*, 826 F. Supp. 2d 1086 (N.D. Ill. 2011).

The Illinois court concluded that the insurer had no duty to defend Duckson in the

SEC action with respect to the monetary claims for "ill-gotten gains" and civil

fines, sanctions, penalties or forfeiture, because these claims were specifically

excluded under the policy's "damages" definition.

**<u>Shoor Action</u>**

Piggybacking on the SEC action, a number of plaintiffs from the

Shoor family (who also made investments at issue in the SEC action) filed an

amended complaint in California state court in August 2012, naming a number of

parties, including Duckson and his former employer, Hinshaw, as defendants.

The Shoor complaint contains 42 paragraphs that are copied, *verbatim*, from the

allegations in the SEC complaint. (Menning Aff., Ex. A.)

In those copied paragraphs, the Shoors allege misconduct by

Duckson with respect to the following: (1) a materially misleading March 2008

PPM, drafted, in part, by Duckson, as the Fund's outside counsel; (2) a materially

misleading November PPM, drafted, in part, by Duckson as the Fund's member

and manager, and Duckson's own company, TFFM, which was the Fund's

investment manager, while Duckson was still employed by Hinshaw; and (3) a

materially misleading February 2009 PPM that was drafted, in part, by Duckson

as the Fund's member and manager, and Duckson's own company, TFFM, which

was the Fund's investment manager, after Duckson left Hinshaw on December

31, 2008. (*Id.* ¶¶ 19-21, 26-37.)  The Shoor complaint also alleges that Duckson

and TFFM made a number of materially false or misleading statements or

material omissions about the Fund in various written documents throughout 2008

and into early 2009.  (*Id.* ¶ 30.)

       In the Shoor complaint, the Shoors discuss two sets of investments

for which they now seek damages.  (*Id.* ¶¶ 58-82.)  Counts One through Four,

which are not brought against Duckson, deal with investments made by the

Shoors between 2005 and 2007 which pre-date any alleged misconduct against

Duckson.  (*Id.* ¶¶ 58-77.)   Count Five, which is brought against Duckson, relates

to a March 2009 investment made by the Shoors after Duckson had left Hinshaw.

(*Id.* ¶¶ 78-82.)

## Shoor Settlement

       In November 2013, the Hinshaw law firm settled with the Shoor

plaintiffs.  As part of the settlement, the Shoor plaintiffs released all claims

against Duckson arising during the time Duckson was employed by Hinshaw.

6

The Shoor plaintiffs specifically did not release Duckson "in connection with any acts, errors, omissions, events or wrongdoing that occurred or may have occurred after he withdrew from Hinshaw on January 1, 2009." (Menning Aff., Ex. C, p. 5.)  Although the defendant Insurers undertook the defense of the Shoor action at its inception on behalf of Hinshaw and Duckson, with a reservation of rights, the Insurers advised Duckson after the Hinshaw/Shoor settlement that they would no longer defend or indemnify him in the Shoor action as a result of the settlement dismissing all claims against Hinshaw and Duckson for the period of time when Duckson was employed at Hinshaw.

## Claims in this Action

In his complaint, Duckson brings causes of action for: (1) declaratory judgment; (2) breach of contract; and (3) breach of fiduciary duty.  As to the declaratory judgment count, "Duckson seeks a declaration of the Insurer Defendants' obligations under the Policy pursuant to 28 U.S.C. §§ 2201(a) and 2202 that the Policy provides Duckson defense and indemnification coverage." (*Id.* Ex. B.)  As to the declaratory judgment count, Duckson does not request that the Court make any declarations as to Hinshaw.  (*Id.* ¶¶ 24-25.)

In the breach of contract count, Duckson alleges that the Policy issued by the Insurers obligates them to provide him with a defense and indemnification, and the Insurers have breached the Policy.  (*Id.* ¶¶ 227-28.) With respect to the breach of fiduciary duty count, Duckson alleges that the

Insurers breached fiduciary duties when they "approved a settlement with the

Shoor Plaintiffs without Duckson's participation or consent, settled covered claims

leaving alleged uncover[ed] claims for Duckson to defend, and for failing to

discharge their duty to defend Duckson in good faith." (*Id.* ¶¶ 31-32.)   Duckson

does not ask the Court to make any declarations as to Hinshaw, nor has he

alleged that Hinshaw breached the Policy or breached any fiduciary duties owed

to Duckson.

**Insurance Policy**

      **Insurance Policy Terms.**  Duckson alleges coverage under the

policy provision whereby:

> The **Company** agrees to pay on behalf of the **Insured** all sums in
> excess of the deductible that the **Insured** shall become legally
> obligated to pay as **damages** and **claim expenses** because of a
> **claim** that is both first made against the **Insured** and reported in
> writing to the **Company** during the **policy period** by reason of an act
> or omission in the performance of **legal services** by the **Insured** or
> by any person for whom the **Insured** is legally liable . . ..

(Compl., Ex. A at 2; Menning Aff., Ex. E at 2).

      The Policy distinguishes a "Named Insured" from an "Insured," and it

identifies the law firm, Hinshaw, as the Named Insured. (Menning Aff. Ex. E at 1).

The Policy description of an Insured includes:

> any lawyer previously affiliated with the **Named Insured** or a
> **predecessor firm** as partner, officer, director, stockholder-
> employee, associate, member or salaried employee, but only for
> **legal services** performed on behalf of the **Named Insured** or a
> **predecessor firm** at the time of such affiliation.

8

(Menning Aff., Ex. E at 4).  The Named Insured, the Hinshaw firm, has certain

defense rights and settlement rights:

> The **Named Insurer** shall have the right to defend in the **Insured's** name, and on the **Insured's** behalf, any **Claim** and offset any **Claims Expenses** incurred in the defense of a **Claim**, up to $250,000, of the deductible amount.  Once such amount has been incurred by the **Named Insured**, the **Company** will have the right and will defend any **Claim** covered by this **Policy**, even if any of the allegations of the Claim are groundless, false, or fraudulent. . . .

(*Id.*, Ex. E (modified by policy endorsement at Doc. No. 9-5, 26)), and:

> The **Company** shall not settle a **claim** without the written consent of the Named Insured. . . .

(*Id.*, Ex. E at 1).  In addition, the Policy contains an Exclusions provision that

provides that the Policy does not apply:

> to any **claim** based on or arising out of an **Insured's** capacity as:
>
> 1.    a former, existing or prospective officer, director, shareholder, partner, manager, member, or trustee of any entity including pension, welfare, profit-sharing, mutual or investment fund or trust, if such entity is not named in the Declarations; . . .

(*Id.*, Ex. E at 6).

Based on the above-cited Policy language the Insurers contend that

they have no obligation to further defend or indemnify Duckson with respect to

claims alleged in the Shoor Action.  Specifically, Defendants insist that any claims

against Duckson that were not settled are outside the scope of the Policy

because they relate to actions or events that occurred after Duckson's

employment with Hinshaw was terminated effective January 1, 2009, when he

was no longer an insured under the Policy.  Moreover, the Insurers contend that the unresolved claim(s) in the Shoor case relate to business pursuits which are expressly excluded from coverage under the Policy.

Duckson, on the other hand, insists that the activity at issue is properly construed as legal work and further argues that malpractice coverage extended beyond the employment termination date pursuant to a Policy provision that states:

> The limits of liability shown in the Declarations and subject to the provisions of this Policy is the amount the Company will pay as **damages** and **claim expenses** regardless of the number of **Insureds**, **claims** made or persons or entities making **claims**.  If **related claims** are subsequently made against the **Insured** and reported to the **Company**, all such **related claims** whenever made, shall be considered a single **claim** first made and reported to the **Company** within the **policy period** in which the earliest of the **related claims** was first made and reported to the **Company**.

(*Id.*, Ex. E at 2).  "Related claims" are defined as:

> All **claims** arising out of a single act or omission or arising out of **related acts or omissions** in the rendering of **legal services**.

(*Id.*, Ex. E at 6).  "Related acts or omissions" are defined to mean:

> all acts or omissions in the rendering of **legal services** that are temporally, logically or causally connected to any common fact, circumstance, situation, transaction, event, advice, or decision.

(*Id.*)  And as pertinent to this action, legal services are defined as:

> A.    Those services, including pro bono services, performed by an Insured for others as lawyer, arbitrator, mediator, title agent or other neutral fact finder or as a notary public . . .

10

B.    those services performed by an Insured as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity and any investment advice given in connection with such services.

(*Id.* Ex. E at 5).

Duckson argues that claims against him in the Shoor action arise out the preparation of the PPMs prepared by him for investment Fund purposes in March 2008 and November 2008.  He asserts that this qualifies as legal work for which Hinshaw billed the Fund, and a claim based on a subsequent PPM written in February 2009, after termination from Hinshaw, is therefore a related claim which is properly construed as part of a single claim for actions occurring during the policy period.  Duckson also contends that the exclusion for claims arising out of an Insured's capacity as a "former, existing or prospective officer, director, shareholder, partner, manager, member, or trustee of any entity including pension, welfare, profit-sharing, mutual or investment fund or trust, if such entity is not named in the Declarations," is inconsistent with the Policy coverage for legal services that might include "investment advice," and is therefore ambiguous.

II.  **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint must be dismissed if it fails to state a claim upon which relief can be granted.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  It must not, however, give effect to conclusory allegations of law.  *Stalley ex rel. United States v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007).  The plaintiff must do more than offer "labels and conclusions" or a "formulaic recitation of the elements of a cause of action . . . ."  *Twombly*, 550 U.S. at 555.  Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . ."  *Id.*

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment.  Fed. R. Civ. P. 12(d).  But the court may consider exhibits attached to the complaint and documents that are necessarily embraced by the complaint without converting the motion into one for summary judgment.  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).  The insurance policy at issue in this case, and the complaint in the Shoor Action, are attached to the complaint and are properly before the court on this motion.  Likewise, the November 2013 Release and Settlement Agreement in the Shoor case is necessarily embraced by the complaint and is properly considered by the court in its consideration of this motion. This matter will be construed as a motion to

dismiss under Rule 12(b)(6).

## III.  Analysis

### Declaratory Judgment and Breach of Contract

The parties do not dispute that a settlement was reached in the Shoor Action, which resolved liability claims against Hinshaw and Duckson for activities and events occurring through December 31, 2008.  The settlement agreement expressly states that Duckson is not released with respect to claims for wrongdoing by Duckson that occurred after he withdrew from employment by Hinshaw on January 1, 2009.  (Menning Aff., Ex. H at 5.)  While the Complaint in this case alleges breach of the insurance contract and seeks defense under the contract, Duckson does not allege that the Shoor settlement agreement and release should be rescinded or otherwise invalidated.  In essence, any claims for defense or indemnification with regard to Duckson's alleged errors, omissions, or wrongdoing occurring before January 1, 2009, are moot.

Duckson, however, seeks continuation of the Insurers' obligation to defend against claims in the Shoor case for damages arising out of work he performed for the investment Fund and TFFM after he was no longer employed by Hinshaw.  As noted above, Duckson contends that such work is properly construed to be legal work, and that the work was a continuation of the Fund and TFFM work that he did while in Hinshaw's employ and therefore maintains a relationship with the earlier covered work for insurance coverage purposes.

Pursuant to Illinois law an insurer must defend if there is doubt as to whether the underlying complaint alleges a theory of recovery under which there is coverage, and the obligation to defend continues until the claim against the insured is limited to a recovery that is not covered under the policy.[2]  *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178, 1185 (7th Cir. 1980).  Likewise, under Minnesota law, an insurer who defends under a reservation of rights can

_____

[2] The parties have suggested that there is an Illinois/Minnesota choice of law issue in this action as to policy construction.  However, no substantive conflict between Minnesota law and Illinois law has been identified, and in fact, no meaningful difference exists as to the applicable laws on policy construction that relate to this case.  Illinois law was applied in the SEC related declaratory judgment action involving the same parties in this case.  *Continental Cas. Co. v. Duckson*, 826 F. Supp. 2d 1086 (N.D. Ill. 2011).

Under Illinois law, construction of an insurance policy is a question of law. *Id.* at 1095 (citing *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1089-90 (2007)).  In construing insurance policy language, the court's aim is to determine and give effect to the intentions of the parties as expressed in the words of the policy.  The court must assume that every provision is intended to serve a purpose, and the policy is to be construed as a whole, giving effect to every provision, and giving consideration to the type of insurance, the nature of the risks involved, and the overall purpose of the policy.  *Id.*  In interpreting an insurance policy and determining whether an ambiguity exists, the court should read all provisions, as opposed to an isolated part, and  if the words in the policy are clear and unambiguous, they must be given their plain, ordinary and popular meaning.  *Id.*  If words used in the policy are reasonably susceptible to more than one meaning, they will be considered ambiguous and will be construed strictly against the insurer, particularly with respect to provisions limiting or excluding coverage.  However, mere disagreement as to the meaning of a contract term will not render it ambiguous, and the court will not strain to find ambiguity where there is none.  *Id.* (citing *Rich,* 875 N.E.2d 1090).  Essentially the same principles relating to construction of an insurance contract would be applicable under Minnesota law.  *See Upsher-Smith Laboratories, Inc. v. Federal Ins.*, 264 F. Supp. 2d 843, 848-49 (D. Minn. 2002).

withdraw its defense once all arguably covered claims have been resolved.

*Meadowbrook, Inc. v. Tower Insurance Co.*, 559 N.W.2d 411, 416 (Minn. 1997).

In light of an insurer's right to withdraw its defense under the reservation of rights,

it must be established that an obligation to defend somehow extends to the

claims for which coverage is denied.  Duckson insists that coverage exists under

the policy because his 2009 activities relate to legal work he performed as a

Hinshaw employee, and the exclusion for his work as a member of a investment

fund is rendered ambiguous and unenforceable as a consequence of the allowed

coverage for investment advice that may be given in connection with "services

performed by an Insured as an administrator, conservator, receiver, executor,

guardian, trustee or in any other fiduciary capacity."

When the Shoor case began it included some claims that related to

legal work that Duckson did when he was covered by the malpractice policy, such

as the preparation of the March 2008 private placement offering.  But the thrust of

the claims against Duckson was not in regard to his work as a legal draftsman;

rather, it was aimed at his fraudulent business activity as an owner, partner,

manager, and officer of the Fund and TFFM.  It was business work for which he

profited to the tune of millions of dollars, not in legal fees, but in investment

advisory fees that flowed not to the law firm but to him through his own

investment advisory firm.  Thus, the Defendant Insurers took a very reasonable

position when the Shoor suit started by reserving their right to ultimately deny

coverage on the basis of the business pursuit exclusion for the claims arising out of the period of time from March 2008 to January 2009, when Duckson was intermingling his business relationship with his law practice.

Duckson tries to ward off the application of the business pursuits exclusion by noting that the Policy did provide coverage for Hinshaw lawyers who provided investment advice given in connection with "services performed by an Insured as an administrator, conservator, receiver, executor, guardian, trustee or in any fiduciary capacity." (Menning Aff., Ex. E at 5). However, it is obvious to this Court that this provision relates to legal services work performed by a Hinshaw lawyer who, on behalf of and for the Hinshaw law firm, and as part of the engagement of the Hinshaw firm, takes on duties such as those of a trustee in a trusts and estates matter. Duckson's operation of the business of the Fund after he took control of the Fund in October 2008 obviously does not fall within the scope of these covered services.

There is, however, a much easier question to address in this case than the one that faced the Insurers at the start of the Shoor case as to whether the business pursuits exclusion could be used to deny indemnification for the claims based on Duckson's activity before January 1, 2009, while he was still employed at Hinshaw. Here we are dealing with the issue of whether Duckson is entitled to coverage from Hinshaw's malpractice insurers for the claims against him for his business activity <u>after</u> he left Hinshaw. Duckson argues that the

claims against him by the Shoor plaintiffs for his conduct after January 1, 2009,

are sufficiently related to the claims against him for his legal services work before

January 1, 2009, so that his post-January 2009 conduct is covered under the

malpractice policy's "tail" coverage.  Tail coverage, however, does not cover a

former Hinshaw lawyer's business work, such as Duckson's work in connection

with the Fund, after the lawyer leaves the law firm.

       The "related claims" provision of the Policy involves claims that are

all related to the providing of legal services.  Under the Policy there are limits on

the amount the insurer will pay as damages and claim expenses regardless of the

number of claims made.  For purposes of calculating these limits, all related

claims are considered to be a single claim "made and reported to the Company

within the policy period in which the earliest of the related claims was first made

and reported to the Company."  (Compl., Ex. A at II, D.)  The term "Related

claims" is defined as: "all claims arising out of a single act or omission or arising

out of related acts or omissions in the rendering of legal services. (*Id.*, Ex. A at III)

(emphasis added).  "Related acts or omissions" are "acts or omissions in the

rendering of legal services that are temporally, logically or causally connected to

any common fact, circumstance, situation, transaction, event, advice or decision."

(*Id.*)  Duckson tries to string this all together by arguing that his conduct in

drafting the fraudulent private placement memorandum in February 2009 was

sufficiently connected to the legal services performed at the Hinshaw firm when

the earlier PPM were drafted in March 2008 and November 2008, to relate back to the earlier covered work, and thereby trigger coverage for the post-January 1, 2009 claims.

The purpose of the provision is to accumulate and determine the number and amount of deductibles and per claim policy limits that apply to a legal malpractice claim or lawsuit.  *See Continental Cas. Co. v. Howard Hoffman and Associates*, 955 N.E.2d 151, 164 (Ill. App. Dist. 2011.)  The related claims provision does not provide coverage for activities that would otherwise not be covered by the policy, such as Duckson's Fund related business activity for his own profit.  Duckson does not have a plausible claim that post-January 1, 2009 work raising money for the Fund by new investment offerings, or any of his other business work for the Fund after January 1, 2009, constitutes the type of connected activity in the rendering of legal services that would trigger coverage. His declaratory judgment and breach of contract claims should be dismissed.

**Breach of Fiduciary Duty**

In Count III of his Complaint, Duckson alleges that the Defendant Insurers breached fiduciary duties in performing their obligations under the Policy "when they, among other things, approved a settlement with Shoor Plaintiffs without Duckson's participation or consent, settled covered claims leaving alleged uncover[ed] claims for Duckson to defend, and for failing to discharge their duty to defend Duckson in good faith."  (Compl. ¶ 32.)  This claim arises out of the

18

Hinshaw Law Firm's entering into a settlement with the Shoor Plaintiffs in
November 2013.  The settlement agreement included a release of all claims
against Duckson with respect to acts or omissions while he was employed at
Hinshaw, but the agreement expressly states that Duckson is not released from
liability for claims made in connection with alleged wrongdoing that occurred after
the termination of his employment with Hinshaw on January 1, 2009.   Duckson
alleges that he was not advised of the Shoor negotiations and settlement; he did
not consent to the settlement; and he was not provided a copy of the settlement
agreement despite repeated requests.  In December 2013, the Defendant
Insurers advised Duckson that as a result of the settlement, they would no longer
defend or indemnify him. (Compl. ¶ 23.)

        An insurer can be liable for a breach of its duty to the insured by
failing to exercise "'good faith' in considering offers to compromise the claim for
an amount within the policy limits."  *Short v. Dairyland Ins. Co.*, 334 N. W. 2d 384,
387 (Minn. 1983).  A breach of the duty to defend occurs when "the insured is
clearly liable and the insurer refuses to settle within the policy limits and the
decision not to settle within the policy limits is not made in good faith and is not
based upon reasonable grounds to believe that the amount demanded is
excessive."  *Id*. at 388.  This doctrine, however, has no applicability to this case.
As described above, the Shoor Plaintiffs claims against Duckson for his conduct
after January 1, 2009, were clearly not covered by the Hinshaw malpractice

policy.  The Defendant Insurers' duty to defend Duckson, if it existed at all, did not

extend to a duty to "settle all claims within the policy limits regardless of whether

the policy provides coverage for a particular claim."  *Seren Innovations, Inc. v.*

*Transcontinental Ins. Co.,* Civ. No. A05-917, 2006 WL 1390262 at * 5 (Minn.

App., May 23, 2006) ("Such an argument implies that the policy-coverage amount

controls a determination of good faith rather than the policy language itself.")

Unlike the situation that arises when an insured is clearly liable and

an insurer refuses to settle within the policy limits, thus prejudicing the insured,

the settlement in this case benefitted Duckson.  The Shoor Plaintiffs released all

their pre-January 1, 2009 claims against Duckson, meaning that they released

the claims for Duckson's alleged fraud in raising money for the Fund in November

2008, after he took control of the business.  Although the claims against Duckson

for his post-January 1, 2009 fraud were left in the case, Duckson never had

insurance coverage for those claims, so he was no worse off, and indeed, he was

better off after the settlement than he was before.

In his opposition to the Insurers' motion to dismiss, Duckson argues

that the policy Endorsement created an agency relationship between Hinshaw

and the Insurers through which the Insurers purportedly assigned their duty to

defend Duckson to Hinshaw.  Duckson asserts that "[b]y virtue of an

endorsement, CNA assigned to Hinshaw, and Hinshaw accepted, CNA's

contractual obligation to defend Duckson for and against the underlying claim."

(Doc. No. 18, Pl.'s Mem. in Opp'n. 14.) But the endorsement does no such thing. Hinshaw had the right to defend the Insured, but was not compelled to do so. The operative provision says that Hinshaw "shall have the right to defend", not that it "will defend" the Insured.  However, no matter whether the Defendant Insurers or Hinshaw had a duty to defend Duckson at the outset of the litigation, any such duty to defend did not include a duty to settle claims like the one based on Duckson's conduct after January 1, 2009, for which there was no coverage. Duckson's claim for breach of fiduciary duty fails.

## IV. <u>Sanctions Motion</u>

Defendants jointly move for sanctions under Fed. R. Civ. P. 11, premised essentially on the Defendants' position that Plaintiff could not reasonably believe that his claims against either the Insurers or Hinshaw had legal merit, and that this declaratory action was commenced for the improper purpose of obtaining legal defense fees for his law firm.  This Court agrees, for the reasons stated above with respect the motion to dismiss, that Plaintiff's claims under the malpractice insurance policy, as well as the claim for breach of fiduciary duty, should be dismissed.  However, it is a giant leap to conclude that the assertion of a claim for which there is no relief is sanctionable under Rule 11.

Rule 11 sanctions may result where the submission of a pleading, motion, or other paper is for an improper purpose such as harassment, to cause unnecessary delay or needless litigation costs; the submission is not supported

by existing law or a nonfrivolous argument for modification or reversal of existing law; or the allegations in the papers lack evidentiary support.  *R&A Small Engine, Inc. v. Midwest Stihl, Inc.*, 471 F. Supp. 2d 977, 978 (D. Minn. 2007).  The primary purpose of Rule 11 sanctions is to deter baseless filings in district court, and the imposition of sanctions is an exercise of court discretion.  *Murphy v. Aurora Loan Services, LLC*, 859 F. Supp. 2d 1016, 1022 (D. Minn. 2012) (imposing a monetary sanction for repetitive filings based on discredited legal theories in foreclosure related actions).

In this case the motion for sanctions is based in significant part on Plaintiff's lack of success in an SEC action and previous declaratory judgment litigation involving the same parties as those in this case.  While the results in those matters might have foreshadowed the results in this case, the issues in the earlier litigation were different and distinguishable, and the results were not wholly determinative of issues in this case.  The complaint in this matter was not filed for purposes of harassment or delay; Plaintiff's arguments are not based upon wholly frivolous application of law or insurance policy interpretation; and the fact allegations are not entirely without factual support.  Under these circumstances this Court concludes that Defendants' joint motion for Rule 11 sanctions should be denied.  *See Teamsters National Freight Industry Negotiating Committee v. MME, Inc.*, 116 F.3d 1241 (8th Cir. 1997).

Based upon the file and documents contained therein, including the

memoranda and exhibits, and in consideration of arguments presented at hearing, this Court makes the following:

## RECOMMENDATION

1.  Defendants' Joint Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be **GRANTED** as specifically stated below (Doc. No. 7);

2.  Defendants' motion to dismiss the Count I claim for declaratory judgment, holding that an attorney malpractice insurance policy provides Plaintiff defense and indemnification coverage, should be **GRANTED**;

3.  Defendants' motion to dismiss Plaintiff's Count II claim for breach of contract should be **GRANTED**;

4.  Defendants' motion to dismiss Plaintiff's Count III claim for breach of duties including fiduciary duty by the Insurer Defendants should be **GRANTED**.

5. Defendants' Joint Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11 should be **DENIED** (Doc. No. 14);

Dated:   December 8, 2014


 s/*Jeffrey J. Keyes*
Jeffrey J. Keyes
United States Magistrate Judge


Under Local Rule 72.2(b) any party may object to this Report and

Recommendation by filing with the Clerk of Court, and serving all parties by December 22, 2014, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

　　　　　Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.